AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Utah

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | |
| Patrick J. Abbott | ) Case No. | 2:20mj697 CMR |
| | ) | |
| | ) | 4:20mj1704 |
| Defendant(s) | ) | |

United States Courts
Southern District of Texas
FILED

*September 14, 2020*

David J. Bradley, Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 8, 2020** in the county of **Salt Lake** in the **Central** District of **Utah**, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent Joseph Oppedisano.

☑ Continued on the attached sheet.

*Joseph Oppedisano*
Complainant's signature

Joseph Oppedisano, Special Agent FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 09/10/2020

*Cecilia M. Romero*
Judge's signature

City and state: Salt Lake City, Utah

Cecilia Romero, U.S. Magistrate Judge
Printed name and title

JOHN W. HUBER, United States Attorney (#7226)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. PATRICK J. ABBOTT, Defendant. | Case No. 2:20mj697 CMR<br><br>FELONY COMPLAINT<br><br>Count 1: 18 U.S.C. § 1343 (Wire Fraud)<br><br>Magistrate Judge Cecilia Romero |

Before the Honorable Cecilia Romero United States Magistrate Court Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

**Count 1**
**18 U.S.C. § 1343**
**(Wire Fraud)**

1. All the allegations set forth in this Complaint are incorporated herein by reference and realleged as though fully set forth herein.

2. On or about September 8, 2020, in the Central Division of the District of Utah, and elsewhere,

**PATRICK J. ABBOTT**,

defendant herein, for the purpose of executing and in furtherance of a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and omissions of material facts, and attempting to do so, did cause to be transmitted in interstate commerce, a wire communication in the form of a text message from his cell phone, number (214) 998-8457, in Houston, Texas, to his intended victim, in Salt Lake City, Utah;

All in violation of 18 U.S.C. § 1343.

This complaint is made on the basis of investigation consisting of the following:

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Joseph T. Oppedisano, being duly sworn, depose and state as follows:

### Brief Summary

1. On August 24, 2020, the Federal Bureau Investigation ("FBI") of Houston, Texas was contacted, through counsel, by a United States-based supply company ("Company 1"). Company 1 was concerned about Patrick J. Abbott ("Abbott") and his company, 2D Global, LLC ("2D") purporting to have access to 1 trillion, 3M N95 respirators and purporting to be a thirty-year client/supplier to Company 1.

2. Company 1 is a global manufacturer and seller of respirators and other personal protective equipment. Company 1 is the only company that can manufacture the respirators Abbott is purporting to sell.

3. Around August 18, 2020, Company 1 contacted the Department of Justice referring Abbott for fraud explaining that Company 1's current rate of production was approximately 1.1 billion 3M N95 respirators per year, with hopes to increase production to 2 billion per year. Company 1 stated it would be impossible for Abbott to have access to 1 trillion masks as it would take Company 1 approximately 909 years (at its current rate of production) to produce that amount. Based on my training and experience it would be impossible for Abbott have access to 1 trillion 3M N95 respirators which would represent more than could be manufactured by Company 1 in several lifetimes.

4. An FBI undercover employee ("UCE 1") contacted Abbott on a messaging form through Abbott's website, 2dglobal.com, inquiring about purchasing large quantities of N95 masks. Abbott contacted the UCE 1 telephonically and explained that he is a government

contractor and able to acquire 3M respirators direct from 3M. The following day, Abbott sent a text message to UCE 1 explaining he had 100 million, 3M 1860 N95 respirators ("1860s"), coming from Germany. Abbott explained to UCE 1 telephonically that the 100 million 1860's were now located in the United Kingdom. Based on my training and experience it would be impossible for Abbott to have access to 100 million 3M N95 respirators because he was not now and had never been a supplier, distributor, or buyer for Company 1.

5.  UCE 1 brought in a second FBI undercover employee ("UCE 2") as an investor. On September 8, 2020, Abbott had a conference call with UCE 1 & 2, explaining his business and how he could acquire 3M, 1860 respirators. Abbott explained that it would cost UCE 2 approximately $3.00 per unit and that the funds would need to be put into a CAGE Wells Fargo bank account until the allotted order was available.

## INTRODUCTION AND AGENT BACKGROUND

6.  I am a Special Agent of the FBI and a Federal law enforcement officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure. I have been employed with the FBI since 2019.

7.  I investigate crimes involving Corporate, Securities, and Commodities Fraud, as well as general mail and wire fraud. I have training in the preparation and service of criminal arrest and search warrants, and I have been involved in the investigation of offenses including mail and wire fraud.

8.  The statements in this affidavit are based on my personal observations, training and experience, information obtained from witnesses and other law enforcement officials, and a review of records obtained during the course of the investigation. Because this affidavit is being

submitted for the limited purpose of a complaint, I have not included each and every fact known to me concerning this investigation

## APPLICABLE STATUTES

9. Title 18, United States Code, Section 1343, reads, in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 24, 2020, the FBI of Houston, Texas received an email complaint from counsel about Company 1. Company 1 was concerned about Abbott and his company, 2D, purporting to have access to 1 trillion, 3M N95 respirators and to be a thirty-year client/supplier to Company 1.

11. Sometime around the beginning of September 2020, your affiant had a phone call with Company 1, in which Company 1 stated that Abbott was not a client/supplier to Company 1, and was in no way affiliated with Company 1. According to Company 1, Abbott and his company 2D have not now or ever been a supplier, distributor, or buyer with Company 1.

12. Company 1 explained that they have received several complaints from clients/distributors about Abbott and his company, 2D. Company 1, senior legal counsel drafted up a draft cease and desist letter in which they made demands on Abbott and 2D. In this letter addressed to Abbott and his company 2D, Company 1 stated that Abbott claimed to be a "thirty-year client and supplier to Company 1" and a "green code channel direct level one first responder

buyer to Company 1." Company 1 also stated that Abbott claimed to have access to over 1 trillion, 3M N95 respirators. Company 1 demanded Abbott cease from any representations of any connection with Company 1 as there is no relationship as Abbott described. Company 1 did not send the letter yet to Abbott because they are pursuing civil action against Abbott and his company, 2D.

13. On August 31, 2020, UCE 1 contacted Abbott on a messaging form through Abbott's website, 2dglobal.com, inquiring about purchasing large quantities of N95 respirators. Later that day, Abbott contacted UCE 1 telephonically and explained that he is a government contractor who was given a Commercial & Government Entity Code ("CAGE") for being a "disabled veteran" owned business. Abbott explained that the CAGE code is given out by the Defense Logistics Agency ("DLA") and is controlled/audited by the United States Pentagon. Abbott claimed to have done two hundred eleven contracts, over a billion dollars in 2D history. Abbott explained that his CAGE code comes up in 3M's system as a "verified" buyer, when he wants to make a purchase. Abbott explained that 2D is not a "distributor," but a "VIP," who has their own "concierge" representative at 3M. This 3M representative walks 2D through the process and helps locate 3M product all over the world. Abbott did not take a fee from the purchase order, but uses the tax write offs at the end of the year by routing it through a non-profit organization controlled by Abbott. Abbott stated each 1860 respirator would cost approximately $3.00. Abbott explained to UCE 1 that he would like to work with him/her, utilizing a four-step PPE process. First, the UCE 1 would send Abbott a purchase order. Second, Abbott would send an invoice to the UCE 1. Third, UCE 1 would transfer money upfront into the 2D CAGE bank account. Fourth, Abbott would send updates until the next 3M allocation lot is available. Later that evening, Abbott sent UCE 1 an email with several attachments about 2D. Attachment one

was the core business overview, attachment two was the CAGE code overview, and attachment three was the four-step PPE process, which is outlined below.





14. On September 01, 2020, Abbott sent several text messages to UCE 1, explaining that he had 100 million, 1860 respirators, coming from Germany. Later that day, Abbott contacted UCE 1 telephonically, stating 100 million, 1860 respirators were now coming from the United Kingdom. UCE 1 explained that he/she is very interested and had reached out to clients to purchase the entire 100 million, 1860 respirator order. UCE 1 explained that if he/she cannot find someone, he/she would at least take approximately 10 million, 3M 1860 respirators.

15. Company 1 confirmed that it only allows distribution of its products (including 3M 1860 respirators) through authorized, licensed distributors. Again, Company 1 confirmed that Abbott is not a licensed distributor.

16. Further, under the Defense Production Act (50 U.S.C. § 4512) the President of the United States has designated N95 respirators as a scare resource; and thus, if Abbott did possess 100 million (or even 10 million) respirators, he would be in violation of the hoarding and price gouging provisions of that statute.

17. On September 04, 2020, UCE 1 contacted Abbott through text message, explaining that he/she had a clients interested in the 100 million, 1860 respirators. UCE 1 asked

Abbott if he is available to conduct for a conference call on September 8 or 9, 2020, Abbott replied he was.

18.     On September 07, 2020, UCE 1 asked Abbott through text message, if he was available for a conference call on September 08, 2020, at approximately 11:30 CST.  UCE 1 explained to Abbott that the conference call will be with himself/herself, Abbott and the investor.  Abbott agreed that he will be available for the conference call.

19.     On September 08, 2020, UCE 1, calling from Utah, contacted Abbott to conduct a conference call with UCE 2, who posed as an investor.  Abbott explained that 2D is a nano biotech business, not in the PPE space, but helps in a humanitarian way connecting buyers with 3M product.  Abbott explained the four-step purchase process outlined above.  Abbott stated that 2D has 3 billion dollars of pre-paid money from clients that are awaiting allocation of 3M respirators to be available.  UCE 2 explained to Abbott that he/she needs to unload cash before next quarter and if Abbott would accept cash.  Abbott explained to UCE 2 that he can accept cash.  Abbott explained that a receipt for cash payment would be provided, showing the deposit slip with the CAGE account number for UCE 2's listing, which will show available under 2D.  Abbott stated that he is allocated 200 million units of respirators per month but 60 million is already accounted for, leaving approximately 140 million units left.  Abbott explained to UCE 2 that last week he had 100 million, 3M 1860 respirators available for UCE 1.  Abbott's counterpart Ned Siegel, United States Ambassador to the United Nations, ended up taking the order for the Commonwealth of the Bahamas on Friday, September 4, 2020.  Abbott explained to UCE 2, it would be approximately $3.00 per unit, cost, insurance, freight ("CIF").  Abbott broke down that $2.97 is for 2D and that 1% is added as a government mandate, equating to $3.00 per unit.  Abbott described to UCE 2 that he can invoice UCE 2 for a higher amount then $3.00 to

provide to the UCE 2's client, so UCE 2 could make commission. Abbott would be paid from UCE 2's client and then he would reimburse the difference back to UCE 2.

20. After the telephonic call with UCE 1 & 2, Abbott sent a text message to UCE 1. Abbott stated that he just checked and in the next 5 days he will "have 1-35M, 1-60M and 1-65M lots coming off hold for allocation." Abbott also stated that he will "have 1-12M and 1-22M that we have not confirmed status." Abbott then sent an additional text message stating that "the 160 total could be available as early as tomorrow at 0900 if funds were available." Abbott explained to UCE 1 that he/she needs to put in enough funds to cover 100 million respirators, equating to 300 million dollars, plus any commissions UCE 2 wants to add. UCE 1 explained to Abbott that UCE 2 must unload approximately 10 million dollars in cash by this coming Friday, September 11, 2020. Abbott stated to UCE 1, to deposit money into the 2D Global, LLC, Wells Fargo bank, account #3361111028, CAGE code 8M0Z3.

## CONCLUSION

21. Based on the information set forth above, I submit that there is probable cause to believe the Subject listed above has violated 18 U.S.C. § 1343.

 /s/ Joseph Oppedisano
Affiant, Joseph Oppedisano

Special Agent, FBI

SUBSCRIBED AND SWORN to before me this 10th day of September, 2020

CECILIA ROMERO

United StatesMagistrate Court Judge

APPROVED:

JOHN W. HUBER
United States Attorney

*/s/ Ruth Hackford-Peer*

RUTH HACKFORD-PEER
Assistant United States Attorney

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of Utah

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Patrick J. Abbott | ) Case No. | 2:20mj697 CMR |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* Patrick J. Abbott,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

On or about September 8, 2020, in the Central Division of the District of Utah, and elsewhere, Patrick J. Abbott, defendant herein, for the purpose of executing and in furtherance of a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and omissions of material facts, and attempting to do so, did cause to be transmitted in interstate commerce, a wire communication in the form of a text message from his cell phone, number (214) 998-8457, in Houston, Texas, to his intended victim, in Salt Lake City, Utah; All in violation of 18 U.S.C. Section 1343

Date: 09/10/2020

*Issuing officer's signature*

City and state: Salt Lake City, Utah

Cecilia Romero, U.S. Magistrate Judge
*Printed name and title*

### Return

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

*Arresting officer's signature*

_____
*Printed name and title*